UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

**ECF CASE**

DEBORAH HANIG,                          :

04 Civ. 8628 (WCC)

                Plaintiff,        :

      - against -                   :        **OPINION**
<u>**AND ORDER**</u>

YORKTOWN CENTRAL SCHOOL DISTRICT,        :

              Defendant.        :

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                    OXMAN TULIS KIRKPATRICK WHYATT
                      & GEIGER, LLP
                    **Attorneys for Plaintiff**
                    120 Bloomingdale Road
                    White Plains, NY 10605

GREGORY J. SPAUN, ESQ.

        Of Counsel


                    SHAW & PERELSON, LLP
                    **Attorneys for Defendant**
                    40 South Roberts Road
                    Highland, NY 12528

MARK C. RUSHFIELD, ESQ.

        Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Deborah Hanig brings this action against defendant the Yorktown Central School District (the "School District"). Plaintiff seeks relief under: (1) 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the United States Constitution, and violations of the New York State Constitution; (2) the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 1201 *et seq.*, alleging that defendant retaliated against her for filing a complaint of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"); (3) the New York Human Rights Law (the "NYHRL"), N.Y. EXEC. LAW § 296, alleging retaliation; and (4) New York State law for breach of contract.[1] Defendant now moves to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated hereinafter, defendant's Rule 12(b)(1) motion is denied, and defendant's Rule 12(b)(6) motion is granted.

## BACKGROUND[2]

Plaintiff is a resident of the state of New York and was, at all times relevant to the Amended Complaint, employed by the School District as a guidance counselor at Yorktown High School. (Am. Complt. ¶ 3.) Plaintiff holds a Bachelors Degree from the State University of New York at Binghamton and a Masters of Art and Masters in Education from Columbia University Teachers

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

[2] The following facts are gleaned from plaintiff's Amended Complaint and are accepted as true for the disposition of the present motions.

1

College.  (*Id*.)  In February of 2000, plaintiff obtained a Provisional Public School Teachers Certificate from the University of the State of New York, Education Department, which certified her as a school counselor.  (*Id*. ¶ 7.)  The School District is located in the State of New York.  (*Id*. ¶ 4.)

In July 2000, plaintiff was hired by the School District as high school guidance counselor. (*Id*. ¶ 5.)  Plaintiff's employment commenced in August 2000, and her job responsibilities included: "counseling students regarding personal or academic issues, assisting students in researching and applying to college, [and] sending letters of recommendation for students to prospective colleges." (*Id*. ¶ 6.)  In addition, plaintiff served as class advisor for the Yorktown High School Class of 2005, advisor to the Diversity Club and was a member of a community service committee.  (*Id*.) Throughout the first two years of plaintiff's employment with the School District she received complimentary and positive evaluations from administrators at Yorktown High School including Principal Dan Brenner, Assistant Principal Randall Glading, and Assistant Principal Wallace F. Maher, Jr.[3]  (*Id*.)  However, in June of 2002, plaintiff's supervisor, Kay Buckley, Teacher Coordinator of School Counseling, advised her that Brenner had seen a recommendation letter that plaintiff wrote for a student and thereafter "commented upon the grammar [plaintiff] used in the letter."  (*Id*. ¶ 9.)  During that conversation, plaintiff informed Buckley that she suffered from learning disabilities known as dyslexia and dysgraphia which affected her ability to write.  (*Id*. ¶ 10.) In response, Buckley instructed plaintiff to give "special attention to the grammar used in recommendations and other correspondence coming from the school."  (*Id*.)

---

[3] For example, plaintiff states that her evaluations contained statements such as, "Ms. Hanig has done an excellent job of establishing a rapport with this student" and "[Ms. Hanig's] [p]reconference preparation/organization was excellent."  (*Id*. ¶ 8.)

On October 27, 2002, Brenner met with plaintiff to discuss issues relating to her writing skills. (*Id*.) During that meeting, Brenner asked plaintiff not to send out any written material without first showing it to himself or Buckley to ensure that it was of adequate quality. (*Id*.) After meeting with Brenner, plaintiff contacted the writing center at Columbia University and hired a doctoral candidate to review her writing. (*Id*. ¶ 11.) Plaintiff states that from that point forward, both the doctoral candidate as well as a specialist dealing with learning disability writing problems reviewed all of plaintiff's letters before she sent them to Buckley or Brenner. (*Id*.)

In a memorandum dated March 14, 2003, Brenner advised plaintiff that he still had concerns regarding her writing ability. (*Id*. ¶ 12.) Brenner indicated that, despite his and Buckely's best efforts to assist her, plaintiff's writing skills continued to fall short of what is required of a high school guidance counselor. (*Id*.) Brenner explained that because high school guidance counselors play an integral role in helping students with the college admissions process, they must possess a skill set which includes a "facility with writing." (*Id*.) On March 31, 2003, seventeen days after Brenner's March 14, 2003 memorandum, plaintiff received a letter from Interim Superintendent of Schools, Vincent Ziccolella, advising her that pursuant to Section 3031 of the N.Y. Educ. Law ("Section 3031") at the April 22, 2003 board meeting he would recommend that plaintiff not be granted tenure as a school counselor. (*Id*. ¶ 13.) Plaintiff contends that because Ziccolella's letter was delivered to her less than thirty days before the April 22, 2003 board meeting, it was in clear violation of Section 3031 which required defendant to notify plaintiff at least thirty days prior to a board meeting at which the Superintendent intended to recommend that plaintiff's employment be terminated. (*Id*. ¶ 14.) Plaintiff alleges that the purpose of the thirty-day period was to allow her to request in writing the reasons for her termination prior to the scheduled board meeting. (*Id*.)

Shortly thereafter, plaintiff contacted representatives of the Yorktown Congress of Teachers and the New York State United Teachers regarding a potential grievance based upon defendant's alleged violation of Section 3031. (*Id.* ¶ 16.) As a result, negotiations took place between plaintiff, the Yorktown Congress of Teachers, Ziccolella and Brenner, and an agreement was reached on May 20, 2003 (the "Agreement"). (*Id.* ¶ 17.) The Agreement, which was entitled "Memorandum of Agreement Between the Yorktown Central School District and Deborah Hanig," provided, *inter alia*, that: (1) plaintiff would continue her employment with the School District for the remainder of the 2002-03 school year; and (2) at the May 20, 2003 board meeting defendant would accept plaintiff's resignation, rather than terminate her employment pursuant to Sections 3031 and 3019-a of the N.Y. EDUC. LAW.[4] (*Id.*) The Agreement further provided that defendant would provide a "neutral reference" for plaintiff to any prospective employers who contacted defendant for a reference. (*Id.*)

At the May 20, 2003 board meeting, the Board of Education accepted plaintiff's resignation and her employment with the School Dictrict terminated at the conclusion of the 2002-03 school year. (*Id.* ¶¶ 18, 19.) Thereafter, plaintiff began to seek other employment as a school guidance counselor. (*Id.* ¶ 19.) In accordance with the Agreement, Brenner provided plaintiff with a letter of recommendation dated June 9, 2003. (*Id.* ¶ 20.) The tone of the June 9, 2003 letter was positive and complimentary. (*Id.*)

On October 20, 2003, plaintiff filed a charge of discrimination against defendant with the EEOC, alleging that "on or about May 20, 2003," defendant discriminated against her on the basis of her disability. (*Id.* ¶¶ 21, 22.) On January 29, 2004, plaintiff received a Dismissal and Notice of

---

[4] The Agreement provided that plaintiff would deliver to defendant an irrevocable letter of resignation, effective June 30, 2003, and that defendant would accept such letter at the May 20, 2003 board meeting. (*Id.*)

Right-to-Sue letter from the EEOC, advising plaintiff that her file was being closed after the EEOC found that the allegations "did not involve a disability as defined by the Americans with Disability Act." (*Id*. ¶ 23 (quotations omitted).)[5]

Plaintiff was unable to obtain employment as a high school guidance counselor until January 2004, when she was hired by New Rochelle High School as an Interim Maternity Leave Counselor. (*Id*. ¶ 24.) According to plaintiff, New Rochelle High School was unable to hire her as a permanent employee, but provided her with a very favorable recommendation upon the expiration of her interim position. (*Id*.) The Amended Complaint does not indicate exactly how long plaintiff's interim position at New Rochelle High School lasted.

Sometime in the Spring of 2004,[6] plaintiff was hired by the Greenburgh 7 Central School District (the "Greenburgh CSD") as a high school guidance counselor for the 2004-05 school year. (*Id*.) However, after she entered into an agreement with the Greenburgh CSD, but before her employment began, plaintiff received a telephone call from Superintendent Josephine Moffett, advising plaintiff that the Greenburgh CSD had received "unfavorable information" about her from defendant and, as a result, had decided to rescind its offer of employment. (*Id*. ¶ 26.) According to plaintiff, she has been otherwise unable to obtain employment as a guidance counselor in Westchester County. (*Id*. ¶ 25.)

---

[5] The Amended Complaint appears to quote a relevant section of the Notice of Right-to-Sue letter, however, plaintiff does not specifically refer to the letter or provide the Court with a copy of it.

[6] Plaintiff alleges that she was interviewed on "multiple occasions" beginning in April 2004. (*Id*. ¶ 25.)

Plaintiff alleges that defendant provided "unfavorable information" about her to the Greenburgh CSD in direct violation of the Agreement. (*Id*. ¶ 27.) Plaintiff also alleges that providing such "unfavorable information" caused the Greenburgh CSD to rescind its offer of employment. (*Id*.) Additionally, plaintiff notes that, although she was able to obtain temporary employment at New Rochelle High School in January 2004, that position was obtained before the EEOC issued its Dismissal and Notice of Right-to-Sue letter to plaintiff. (*Id*. ¶ 29.) Accordingly, plaintiff alleges that:

> As a proximate result of the defendant's intentional, willful and/or reckless conduct, plaintiff has been punished for the exercise of her First Amendment Rights; repeatedly been denied other employment opportunities by reason of her expression of opinion regarding matters of public concern, including, *inter alia*, the defendant's repeated violation of New York Education Law Section 3031; plaintiff has been humiliated, degraded and publically [sic] embarrassed; deliberately and punitively denied the ability to obtain future employment; caused serious emotional upset and anxiety.

(*Id*.)

Defendant now moves for dismissal of the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Def. Mem. Supp. Mot. Dismiss at 2.) Defendant contends that this Court lacks subject matter jurisdiction over this action because defendant is entitled to immunity under the Eleventh Amendment to the United States Constitution. (*Id*.) Defendant further contends that, even if the Court were to decide that Eleventh Amendment immunity does not apply to the School Dictrict, plaintiff has failed to state a federal claim and therefore the Court should decline to retain jurisdiction over plaintiff's remaining state law claims. (*Id*.) First, we will consider defendant's Rule 12(b)(1) motion, and then, if necessary, defendant's

Rule 12(b)(6) motion.[7]

## DISCUSSION

## I.  Motion to Dismiss Pursuant to Rule 12(b)(1)

### A.  Standard of Review

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos*, 140 F.3d at 129 (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). When determining whether subject matter jurisdiction exists, a court may properly refer to evidence beyond the pleadings to resolve disputed jurisdictional facts. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Thus, the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed. R. Civ. P. 56(e)." *Serrano v. 900 5th Avenue Corp.*, 4 F. Supp. 2d 315, 316 (S.D.N.Y. 1998). Therefore, plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

_____

[7] When presented with a Rule 12(b)(1) motion along with other motions to dismiss, the court must decide the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that "where . . . the defendant moves for dismissal under Rule 12(b)(1), . . ., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot") (internal citations and quotations omitted).

## B.    Eleventh Amendment Immunity

The Eleventh Amendment "affirms the fundamental principle that sovereign immunity limits the grant of judicial authority contained in Article III of the Constitution." *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 27 (2d Cir. 1986), *overruled on other grounds by Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002). Eleventh Amendment immunity applies "'when the state is the real substantial party in interest.'" *Id*. (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). Generally, the state is the real party in interest when payment of a judgment would come from the state treasury. *See Fay*, 802 F.2d at 27 (citations omitted).

Defendant contends that this Court lacks subject matter jurisdiction over plaintiff's federal claims because, as a New York school district, defendant is an "arm of the State" and therefore entitled to Eleventh Amendment Immunity. (Def. Mem. Supp. Mot. Dismiss at 4.) In support of this contention, defendant relies on *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) wherein the Supreme Court held that the ADEA did not validly abrogate the states' Eleventh Amendment immunity from suit by private individuals. (Def. Mem. Supp. Mot. Dismiss at 4.) In further support of its argument, defendant claims that New York school districts satisfy the six-factor test set forth in *McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001), which is used to determine whether a given entity is considered an "arm of the state" for purposes of Eleventh Amendment immunity.[8] We find

---

[8] Defendant also cites and relies upon unpublished decisions of the Southern District of New York and the Second Circuit. In one such case, *Scaglione v. Mamaroneck Union Free Sch. Dist.*, 47 Fed. Appx. 17 (2d Cir. 2002), "the Second Circuit held that the defendant school district was entitled to Eleventh Amendment immunity." *Cohn v. New Paltz Cent. Sch. Dist.*, No. 1:04 Civ. 1066, 2005 WL 713588, at *4 (N.D.N.Y. Mar. 30, 2005). However, "[i]n that unpublished opinion, the Second Circuit provided little discussion of the issue and did not address its previous decision in *Fay,*" with which it was in direct opposition. *Id*. Fortunately, we need not address the "seeming anomaly" between *Scaglione* and *Fay* in the present opinion, because, according to the Second Circuit rules, *Scaglione*, as well as the other unpublished decisions that defendant

defendant's argument unconvincing, to put it mildly.

The Second Circuit has repeatedly held that a New York school district is not entitled to Eleventh Amendment immunity. *See Fay*, 802 F.2d at 27; *see also Rosa R. v. Connelly*, 889 F.2d 435 (2d Cir. 1989) (reaffirming the principles of *Fay*). In *Fay*, the Second Circuit explicitly rejected the very argument defendant now advances, stating that "[i]nferior governmental bodies do not share in Eleventh Amendment immunity simply because they receive state funds . . . [and] being a steward of state education policy does not make the school district an alter ego of the state." 802 F.2d at 27. Furthermore, the Supreme Court has also recognized that a school district, which has the power to issue bonds and to levy taxes, is more like a political subdivision, such as a county or city, than a state and thus is not entitled to Eleventh Amendment immunity despite receiving a significant amount of money from the state. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977). This Court is not only persuaded by but is bound by the Second Circuit's decision in *Fay*, and accordingly concludes that defendant is not immune from suit under the Eleventh Amendment.

Notwithstanding the foregoing, we note that even if defendant is correct that we need not summarily dismiss defendant's argument in light of *Fay* without a consideration of the *McGinty* "arm of the state" test, our conclusion remains the same. The six factors set forth in *McGinty* for use in determining whether an entity is considered an "arm of the state" for Eleventh Amendment

cites, "*may not be cited as precedential authority to this or any other court*." *Id*. (citing U.S. Ct. of App. 2d Cir. R. 0.23) (emphasis added). Consequently, "*Scaglione* has no authority (binding or persuasive) in this case" and *Fay* is still the controlling law in the Second Circuit. *Id*.; *see also Zahran v. State of N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 209 (N.D.N.Y. 2004) (citing *Fay* and recognizing that the Second Circuit has determined that a school district is not entitled to Eleventh Amendment immunity).

immunity purposes are:

> (1) how the entity is identified in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding on the state.

*Cohn*, 2005 WL 713588, at *4 (citing *McGinty*, 251 F.3d at 95-96). "If these factors point in one direction, the inquiry is complete. If not, a court must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk." *Id*.


### 1.   How the Entity is Identified in its Documents of Origin

New York Education Law provides that "[t]he board of education . . . is hereby created a body corporate." N.Y. EDUC. LAW §§ 1701, 1804.[9]   In addition, Article X, § 5 of the New York State Constitution provides that "[n]o public corporation other than a county, city, town, village, *school district . . .* " (emphasis added), which indicates an association between school districts and other entities which are considered public corporations. *See Cohn,* 2005 WL 713588, at *5 (citation and quotations omitted). It is well-settled that counties, cities, towns and villages do not enjoy Eleventh Amendment immunity.

Consequently, New York courts have concluded that although school board members perform tasks associated with local government, they are nonetheless considered independent corporations, as are counties, cities and towns, and are separate and apart from the municipality in

---

[9] We note that the quoted language comes from "§ 1701 [of the N.Y. EDUC. LAW], which applies to union free school districts . . . [however,] Section 1804 . . . provides that '[e]xcept as provided in this article, all the provisions of this chapter of or any general law relating to or affecting union free school districts shall apply to central districts . . . .'" *Cohn*, 2005 WL 713588, at *17 n.3 (quoting N.Y. EDUC. LAW § 1804).

which they are located. *See Cohn*, 2005 WL 713588, at *5 (citing *Jeter v. Ellenville Cent. Sch. Dist.*, 41 N.Y.2d 283, 287, 392 N.Y.S.2d 403, 360 N.E.2d 1086 (1977); *Lanza v. Wagner*, 11 N.Y.2d 317, 326, 229 N.Y.S.2d 380, 183 N.E.2d 670 (1962)). Furthermore, as previously mentioned, the Supreme Court in *Mt. Healthy* recognized that a school district is more like a county or city than an "arm of the State." 429 U.S. at 280. In light of the foregoing, we conclude that the first *McGinty* factor weighs against the application of Eleventh Amendment immunity to the School District.

## 2.      How the Governing Members of the Entity Are Appointed

Section 1804 of the N.Y. EDUC. LAW provides that "[e]ach such central school district shall be managed by a board of education," and that such board members are to be locally elected, not appointed. Accordingly, we conclude that the second *McGinty* factor weighs against the application of Eleventh Amendment immunity to the School District. *See Cohn*, 2005 WL 713588, at *6; *see also Woods v. Cafiero*, No. 1:04 Civ. 0695, 2005 U.S. Dist. LEXIS 5780, at *10 (N.D.N.Y. Feb. 7, 2005).

## 3.      How the Entity is Funded

While school districts receive some financial assistance from the state, most funding comes from local sources. For example, "the budgets of central school districts are determined on a local basis"and school districts are responsible for raising the funds necessary to pay teachers' salaries. *Cohn*, 2005 WL 713588, at *6; *see also* N.Y. EDUC. LAW § 1804(4) ("The board of education . . . shall hold a budget hearing . . . and shall prepare and present to the voters at such budget hearing a proposed school district budget."). Furthermore, as previously mentioned, the Second Circuit has

made clear that school districts are not entitled to Eleventh Amendment immunity simply because they receive state funds. *See Fay*, 802 F.2d at 27*; see also Rosa*, 889 F.2d at 437. Accordingly, we conclude that the third *McGinty* factor weighs against the application of Eleventh Amendment immunity to the School District.

### 4. Whether the Entity's Function is Traditionally One of Local or State Government

A review of relevant case law and New York legislation leads us to conclude that the fourth *McGinty* factor is neutral. For example, *Lanza* clearly indicates that education is a state function. *Lanza*, 11 N.Y.2d at 326 ("[M]embers of a Board of Education . . . are officers of an independent corporation separate and distinct from the city, created by the State for the purpose of carrying out a purely State function . . . ."). Additionally, Article XI, § 1 of the New York State Constitution specifically imposes the obligation to provide a public education directly on the state. *See Cohn*, 2005 WL 713588, at *6. However, throughout history, education was traditionally a local function. *See id*. (citing *Reform Educ. Fin. Inequities Today v. Cuomo*, 86 N.Y.2d 279, 284, 631 N.Y.S.2d 551, 655 N.E.2d 647 (1995); *Paynter ex rel. Stone v. State of New York*, 290 A.D.2d 95, 99, 735 N.Y.S.2d 337 (4th Dep't 2001) ("By 1894 there were 11,778 local school districts . . . each of which was required by State law to provide a free education to all persons over five and under twenty-one years of age residing in the district.") (quotations and citations omitted); *Campaign for Fiscal Equity, Inc. v. State of New York*, 86 N.Y.2d 307, 320, 631 N.Y.S.2d 565, 655 N.E.2d 661 (1995) (noting state interest in preserving and promoting local control of education)). Accordingly, because education has traditionally been both a state and a local function, we conclude that this factor neither weighs in favor of nor against the application of Eleventh Amendment immunity to the School

District.

### 5.    Whether the State Has a Veto Power Over the Entity's Actions

The Commissioner of Education (the "Commissioner") is charged with general supervision over the school districts and has some authority to review the decisions of local boards of education. *See Cohn*, 2005 WL 713588, at *7 (citing N.Y. EDUC. LAW §§ 305(2), 306, 310 and1706) (noting that the Commissioner may remove members of the board of education, superintendents or other school officials with cause and may withhold monies from school districts in certain circumstances); *see also* N.Y. EDUC. LAW § 305(2).   However, the Commissioner's power does have limitations and it is well-established that "local school boards exercise substantial discretion in the day-to-day management of the school districts without input or veto power by the Commissioner." *Cohn*, 2005 WL 713588, at *7.   More specifically, a review of the New York Education Law reveals that the school districts alone have the power and authority to:

> (1) adopt their own by-laws; (2) establish their own rules and regulations concerning order and discipline in then schools; (3) prescribe the course of study by which students are graded and classified; (4) prescribe the textbooks to be used; (5) purchase  or lease sites for school-related purposes; (6) take charge or possession of the schoolhouse, sites, lots, furniture, books, apparatus and all school property within its district; (7) contract with and employ teachers; (8) determine the number of teachers so employed; (8) [sic] remove board members for misconduct; (9) raise by tax moneys required to pay teachers' salaries . . . .

*Id.* (citing N.Y. EDUC. LAW § 1709).   Thus, it is clear that although the state may be charged with general supervision and control over education within the state, the bulk of the actual authority, responsibility and control is vested with the local school districts themselves.  *See Rosa*, 889 F.2d at 437 (noting that "being a steward of state educational policy does not make the school district an alter ego of the state," especially where "actual implementation of the goals and maintenance of the

public schools are the responsibilities of local boards whose members are chosen by municipal election"). Accordingly, we conclude that the fifth *McGinty* factor weighs against the application of Eleventh Amendment immunity to the School District.

### 6.     Whether the Entity's Financial Obligations are Binding on the State

This factor is regarded as the most important because it implicates one of the primary purposes of Eleventh Amendment immunity. *See Fay*, 802 F.2d at 27 (noting that Eleventh Amendment immunity applies "when the state is the real party in interest," i.e., where the payment of a judgment would come from the state treasury); *see also Cohn*, 2005 WL 713588, at *8 (noting that the sixth *McGinty* factor is the most important). In other words, we must consider whether a judgment against the School District would have the practical effect of requiring payment from the State. *See McGinty*, 251 F.3d at 99.

A review of New York Education Law and the New York Constitution leads us to conclude that this factor weighs strongly against the application of Eleventh Amendment immunity to the School District. For example, N.Y. EDUC. LAW § 1709(26) provides that local school boards shall have the authority and duty to "pay any judgments levied against the school district, and in the event that there are no monies otherwise available, . . . levy a tax upon the taxable property of the district to pay the same." Additionally, Article X, § 5 of the New York State Constitution provides that "[n]either the state nor any political subdivision thereof shall at any time be liable for the payment of any obligations issued by such a public corporation." Furthermore, it is common knowledge that local schools draw the majority of their financial support from the local taxpayers.

The application of the *McGinty* factors to this case leads us to conclude that the School District is not an "arm of the state" and is therefore not entitled to Eleventh Amendment immunity. However, "to the extent that the application of these factors is not conclusive, for the reasons stated above [under factor six] it is clear that 'a suit against [the School District] in federal court would [not] threaten the integrity of the state and expose its treasury to risk'" and therefore Eleventh Amendment immunity does not apply. *Cohn*, 2005 WL 713588, at *8 (quoting *McGinty*, 251 F.3d at 96.)

Since we have determined that Eleventh Amendment immunity does not apply to the School District, we deny defendant's Rule 12(b)(1) motion for lack of subject matter jurisdiction. We will now consider defendant's Rule 12(b)(6) motion.

## II.  Motion to Dismiss Pursuant to Rule 12(b)(6)

### A.  Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer*, 416 U.S. at 236; *see also Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).  On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  Generally, "conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34 [1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference, *see* FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996), and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *see also Lee v. State of N.Y. Dep't of Corr. Servs.*, No. 97 Civ. 7112, 1999 WL 673339, at *2 n.4 (S.D.N.Y. Aug. 30, 1999); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas*, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("The Court can consider documents referenced in the Complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing their suit.").

Defendant contends that plaintiff's allegations do not make out a *prima facie* case for any of her federal claims and, therefore, the Court should decline to exercise pendent jurisdiction over plaintiff's remaining state law claims. We will now address defendant's arguments with respect to each of plaintiff's federal claims.

### B. Section 1983

#### 1. First Amendment Retaliation[10]

To state a claim under § 1983 for retaliation in violation of the First Amendment plaintiff must demonstrate: (1) that her speech was constitutionally protected; (2) that she suffered an adverse employment action; and (3) a causal connection between the protected speech and the adverse employment action. *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). Defendant contends that plaintiff has failed to establish all three elements of a *prima facie* case for First Amendment retaliation. (Def. Mem. Supp. Mot. Dismiss at 12.)

The speech that plaintiff alleges is protected under the First Amendment is her "expression of opinion . . . regarding . . . defendant's repeated violation of New York Education Law Section 3031 . . . ," in other words, her complaint to the union. (Am. Complt. ¶ 29.) Defendant contends that plaintiff is unable to demonstrate that her speech was constitutionally protected because the primary aim of her complaint to the union was the protection of her employment, which is clearly not a matter of public concern. (Def. Mem. Supp. Mot. Dismiss at 14.)

For speech to be protected under the First Amendment, it must first relate to "any matter of political, social or other concern to the community." *Connick v. Meyers*, 461 U.S. 138, 146 (1983). The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the court, and must be "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 148. In making its determination, the court

---

[10] Plaintiff also alleges a § 1983 claim under the New York State Constitution. We note that free speech claims under the First Amendment and the New York State Constitution are subject to the same standard therefore the following analysis applies to both of plaintiff's claims. *See Sanchez v. Turner*, No. 00 Civ. 1674, 2002 WL 1343754, at *4 n.4 (S.D.N.Y. June 19, 2002).

should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose. *See Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999). The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned citizen. *Id.*

We have serious doubts as to whether plaintiff's complaints to her union about defendant's alleged violation of Section 3031 involves a matter of public concern. While plaintiff is correct that speech involving an employer's violation of state law will often be a matter of social and political concern, here the facts do not suggest that plaintiff was motivated either by a desire to protect the public welfare or a desire to bring the state's alleged wrongdoing to light. To the contrary, it is clear that plaintiff's speech related primarily if not exclusively to her desire to protect her job and/or her reputation as a school counselor. Any motivation to advance a public interest was tenuous and incidental. *See Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (noting that the fact that plaintiff's speech could be broadly construed to implicate matters of potential public concern did not alter the general nature of her statements which were personally motivated); *see also Levich v. Liberty Cent. Sch. Dist.*, 361 F. Supp. 2d 151, 166 (S.D.N.Y. 2004) (Conner, J.) (finding that plaintiff school teacher's letter to parents, wherein he complained about the school district's decision to change his teaching assignment, was written in "his role as a disgruntled employee and not as a private citizen").

However, even if plaintiff's speech did involve a matter of public concern and was thus constitutionally protected, she is still unable to make out a *prima facie* case for First Amendment retaliation because she has not alleged the requisite causal connection between her speech and the adverse employment action. Plaintiff alleges that the adverse employment action she suffered was

the School District's decision not to grant her tenure, thus effectively terminating her employment. (Pl. Mem. Opp. Mot. Dismiss at 10-11.) Plaintiff also alleges that the aforementioned adverse employment action did not occur until the School District accepted her resignation at the May 20, 2003 board meeting, because the Board of Education could have changed its mind and ignored the Superintendent's negative recommendation. (*Id*.) However, plaintiff's version of events conveniently fails to take into account the fact that defendant's acceptance of her resignation on May 20, 2003 was part of the Agreement that the parties entered into as a result of her complaint to the union, a complaint that was prompted solely by defendant's March 31, 2003 letter to plaintiff advising her that she was not being granted tenure.[11] Despite plaintiff's attempt to rewrite history, it is clear that the speech which plaintiff claims is protected was prompted by the very action she now says that it caused. Accordingly, we grant defendant's Rule 12(b)(6) motion with respect to plaintiff's § 1983 claims under the First Amendment and the New York State Constitution. We will now consider plaintiff's remaining § 1983 claim.

### 2.    Fourteenth Amendment Violation

In Count II of the Amended Complaint, plaintiff brings a § 1983 claim for violation of the Fourteenth Amendment. (Am. Complt. ¶¶ 32-33.) Defendant moved to dismiss all of plaintiff's

---

[11] Furthermore, plaintiff's contention directly contradicts New York law which provides that "the district superintendent's recommendation at the end of the probationary period to deny tenure is *binding upon the board of education*." *See United Liverpool Faculty Assoc. v. Bd. of Educ.*, 52 N.Y.2d 1038, 1042, 438 N.Y.S.2d 505, 420 N.E.2d 386 (1981) (citing *Matter of Anderson v. Bd. of Educ.*, 39 N.Y.2d 897, 898, 382 N.Y.S.2d 750, 346 N.E.2d 551 (1976)) (emphasis added). Therefore, "while a board of education could, in the face of a positive recommendation by its superintendent of schools, deny tenure to a probationary teacher, it could not, in the absence of such recommendation, bestow it." *Id*. (quotations and citation omitted).

claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). However, plaintiff appears to have abandoned her § 1983 claim under the Fourteenth Amendment, as she failed to oppose dismissal of that claim in her Memorandum of Law in Opposition to the present motion. Consequently, because plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed. *See Martinez v. Sanders*, No. 02 Civ. 5624, 2004 WL 1234041, at *2-3 (S.D.N.Y. June 3, 2004) (finding that plaintiff's failure to oppose dismissal of certain claims, enabled the court to deem them abandoned); *see also Devito v. Smithkline Beecham Corp.*, No. 02 Civ. 0745, 2004 U.S. Dist. LEXIS 27374, at *14 (N.D.N.Y. Nov. 29, 2004) (noting that plaintiff's lack of response amounted to a concession); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1129 (S.D.N.Y. 1993) (recognizing that party's failure to address claim raised in adversary's papers may indicate abandonment); *cf Anti-Monopoly Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."). We will now consider plaintiff's ADA retaliation claim.

## C. <u>ADA Retaliation</u>

The ADA prohibits retaliation against an employee who has engaged in a statutorily protected activity, and provides that:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 1203(a). To state a claim for retaliation in violation of the ADA, plaintiff must show: (1) that she participated in a protected activity; (2) that her employer was aware of the protected activity; (3) that her employer took adverse employment action against her; and (4) a causal

connection between the protected activity and the adverse employment action. *See Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002); *see also Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998) (Title VII).

Defendant's primary argument supporting dismissal of plaintiff's ADA retaliation claim is that she is unable to establish the first factor, that she engaged in a protected activity, because she has not pled facts establishing that she had a good-faith reasonable belief that actions of which she complained to the EEOC violated her rights under the ADA. (Def. Mem. Supp. Mot. Dismiss at 18.) Defendant contends that we should accord "great deference" to the EEOC's finding that plaintiff did not possess a disability covered by the ADA. (*Id.*)

First, we note that defendant seems to have overlooked the fact that the protected activity that plaintiff alleges she engaged in was the filing of her EEOC complaint, an activity which has been well-established as being protected under the ADA. *See Lovejoy-Wilson v. NOCO Motor Fuel,* Inc., 263 F.3d 208, 223 (2d Cir. 2001); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Furthermore, it is well-settled that a "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith reasonable belief that the underlying challenged actions of the employer violated the law." *Treglia,* 313 F.3d at 719 (quoting *Sarno*, 183 F.3d at 159 (internal quotations omitted)). A review of the Amended Complaint leads us to conclude that plaintiff has alleged facts sufficient to establish that she reasonably believed the decision not to grant her tenure was at least partially motivated by the School District's knowledge of her learning disability and its affect on her writing ability. Unfortunately, plaintiff has failed to successfully plead the remaining elements of her ADA retaliation claim.

Plaintiff alleges that defendant retaliated against her for filing her EEOC complaint by providing "unfavorable information" to the Greenburgh CSD, in violation of defendant's contractual obligation to provide a "neutral reference" for plaintiff to any prospective employer. (Am. Complt. ¶ 39.) However, to state a *prima facie* case for retaliation under the ADA, plaintiff must allege that her *employer* took adverse *employment* action against her and that a causal connection exists between the protected activity and the alleged adverse *employment* action. The Amended Complaint clearly states that plaintiff's employment with the School District ended on June 30, 2003. (*Id*. ¶ 18.) Therefore, at the time that defendant allegedly provided the Greenburgh CSD with "unfavorable information" about plaintiff, the School District was no longer her employer; thus such action could not constitute an adverse employment action. Even though defendant's action, as alleged by plaintiff, may be violative of the Agreement, it is more appropriately actionable under a breach of contract claim. Accordingly, as plaintiff has not alleged sufficient facts to establish the third and fourth elements of a *prima facie* case for retaliation under the ADA, we grant defendant's Rule 12(b)(6) motion with respect to that claim.

Additionally, we note that the elements of a *prima facie* case for retaliation under the ADA also apply to plaintiff's retaliation claim brought under the NYHRL.[12] *See Treglia*, 313 F.3d at 719 (citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000)) (applying ADA analysis to plaintiff's retaliation claims under both the ADA and the NYHRL); *see also Dooner v.*

---

[12] There are some differences; for example, the definition of disability under the state law is broader than the federal definition. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 743-744 (S.D.N.Y. 2005). However, those differences do not affect the outcome or our analysis in the case at bar because, as previously mentioned, the facts as alleged in the Amended Complaint indicate that plaintiff was no longer employed by the School District at the time the alleged adverse action occurred.

*Keefe, Bruyette & Woods, Inc.*, 157 F. Supp. 2d 265, 283 (S.D.N.Y. 2001). Accordingly, defendant's motion to dismiss under Rule 12(b)(6) is also granted with regard to plaintiff's retaliation claim under the NYHRL for the same reasons that plaintiff's ADA claim fails as a matter of law.

### III.    <u>Remaining State Law Claim</u>

A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When determining whether to exercise supplemental jurisdiction, a district court has "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case." *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (quoting *Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir. 1992)). Accordingly, as all federal claims have been dismissed, we exercise our discretion and decline to retain supplemental jurisdiction over plaintiff's remaining state law breach of contract claim.

## CONCLUSION

For the foregoing reasons, defendant Yorktown Central School District's motion to dismiss for lack of subject matter jurisdiction is denied. However, defendant's motion to dismiss for failure to state a claim is granted with respect to plaintiff Deborah Hanig's § 1983 claims brought under the First Amendment (Count I), and the New York State Constitution (Count III), and also with respect to plaintiff's Americans with Disabilities Act and New York Human Rights Law claims (Counts IV and V). Consequently, those claims are hereby dismissed without prejudice. In addition, plaintiff's § 1983 claim brought under the Fourteenth Amendment (Count II) is deemed abandoned and is hereby dismissed without prejudice. Lastly, the Court declines to exercise supplemental jurisdiction over plaintiff's breach of contract claim (Count VI), and therefore dismisses that claim without prejudice.


SO ORDERED

Dated: White Plains, New York
       September 2, 2005


_William C. Conner_
Sr. United States District Judge